## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| **WISER PARTNERS, LLC** | : | |
| **736 Kroger Valley Drive** | : | |
| **Cincinnati, OH 45226** | : | **Case No.** _____ |
| | : | |
| **Plaintiff,** | : | **HON.**_____ |
| | : | |
| **v.** | : | |
| | : | **COMPLAINT FOR MONEY** |
| **VOLATO, INC.** | : | **DAMAGES** |
| **1954 Airport Road, Suite 124** | : | |
| **Atlanta, GA 30341** | : | **JURY DEMAND ENDORSED** |
| | : | |
| **Defendant.** | : | |

Plaintiff Wiser Partners, LLC ("Wiser Partners"), for its Complaint against Defendant Volato, Inc. ("Volato" or "Defendant"), states as follows:

### NATURE OF THE ACTION

1.     This case arises out of Volato's breach of the parties' January 19, 2024, Master Services Agreement and the parties' January 19, 2024, Scope of Work Agreement (collectively, "Agreements"), true and accurate copies of which are attached hereto as Exhibit A and Exhibit B, respectively. Although Wiser Partners and Volato entered into a binding contract by which Volato agreed to pay Wiser Partners' fee for executive recruiting services, and although Wiser Partners has fulfilled all of its obligations under the Agreements, Volato has refused to pay Wiser Partners the amounts owed to Wiser Partners.

### PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff Wiser Partners, LLC is an Ohio limited liability company with its principal place of business in Cincinnati, Ohio.

3.     Upon information and belief, Defendant Volato is a corporation based in Georgia with a principal place of business in Atlanta, Georgia.

4.      This Court has subject matter jurisdiction because the amount in controversy exceeds the minimum jurisdictional threshold for this Court.

5.      This Court has personal jurisdiction because Volato expressly consented to personal jurisdiction in Hamilton County, Ohio. (Ex. A, p. 3).

6.      Venue is proper in this forum because the parties have agreed that disputes arising out of the Agreements should be resolved in courts located in Hamilton County, Ohio. (Ex. A, p. 3).

## FACTUAL BACKGROUND

7.      Wiser Partners is an Ohio limited liability company that provides executive recruiting services.

8.      Volato is a corporation in the private aviation industry and is located in Atlanta, Georgia.

9.      On January 19, 2024, Wiser Partners and Volato entered into two agreements: (1) a Master Services Agreement ("MSA"), which outlined the general terms of Volato's retention of Wiser Partners for executive recruiting services, and (2) a Scope of Work Agreement ("SOWA"), executed pursuant to the MSA, which detailed Wiser Partners' search to fill the position of Chief Marketing Officer at Volato, including the target compensation for the position and the fee to be paid to Wiser Partners. (Exs. A and B).

### *The Master Services Agreement*

10.     The MSA stipulates that Wiser Partners was to be Defendant's exclusive agent for executive recruiting services, and provides that a separate Scope of Work Agreement would be executed for each future search to be conducted by Wiser Partners. (Ex. A, p. 1).

-2-

11.     The MSA also stipulates that Wiser Partners' fee for its services on any specific search would be 30% of the target compensation for the position being filled, including base salary, incentive bonus, and sign-on bonus, payable during the first full calendar year of a new hire's employment. (*Id.*).

12.     This fee was to be paid in three installments: one-third upon execution of a Scope of Work Agreement, one-third upon Wiser Partners' submission of candidates to fill a position, and one-third upon any candidate accepting employment with the hiring company. (*Id.*).

13.     With regard to termination, the MSA provides that if a hiring company (in this instance, Volato) is dissatisfied for any reason with Wiser Partners' efforts, it may cancel the engagement within forty-five (45) days of executing a Scope of Work Agreement by sending written notice and providing payment to Wiser Partners of 50% of the projected fee. (Ex. A, p. 3).

14.     The MSA further provides that any termination by a hiring company after the first forty-five (45) days of engagement will result in payment to Wiser Partners of 80% of the projected fee. (*Id.*).

15.     The MSA also provides that Wiser Partners can terminate an engagement if the hiring company "suspends, or fails to otherwise advance the search, for any reason, for more than 14 calendar days." (Ex. A, p. 3).

16.     The MSA stipulates that if Wiser Partners chooses to terminate an engagement, the hiring company "**must pay [Wiser Partners] the entire Fee, unpaid OOP expenses, and all other amounts which subsequently become payable**…[.]" (*Id.*).

17.     The MSA was executed by David Wiser, Managing Principal of Wiser Partners, and Trudie Diaz-Farmer, Vice President of Administration, on behalf of Volato, on January 19, 2024. (*See generally*, Ex. A).

### *The Scope of Work Agreement*

18.     Pursuant to the MSA, Wiser Partners and Volato simultaneously executed a SOWA outlining Wiser Partners' search for candidates to fill the Chief Marketing Officer position at Volato. (*See generally*, Ex. B).

19.     The SOWA provides that all "terms for this engagement have been outlined and agreed-to in an original Master Services Agreement (MSA), executed between the two parties in January, 2024" and notes that "[t]hose terms remain unchanged." (*Id.*).

20.     The SOWA provides that the total year-one compensation for the Chief Marketing Officer position was $560,000.00, and that the corresponding fee for Wiser Partners' services was set at $168,000.00. (*Id.*).

21.     The SOWA was executed by David Wiser, Managing Principal of Wiser Partners, and Trudie Diaz-Farmer, Vice President of Administration, on behalf of Volato, on January 19, 2024. (*Id.*).

### *Wiser Partners' Services and Requests for Payment*

22.     After the MSA and SOWA were executed, Wiser Partners located thirty-eight (38) candidates that fit the search criteria and conducted screening interviews of several candidates.

23.     Wiser Partners also created Candidate Executive Summaries for each candidate, including information regarding each candidate's work history, critical experience and skills, and an analysis of why Wiser Partners believed each candidate was a good match for the Chief Marketing Position at Volato.

24.     Volato expressed interest in a number of candidates and, by March of 2024, had interviewed numerous candidates presented by Wiser Partners.

25.    Pursuant to the terms of the MSA and SOWA, Wiser Partners sent Volato an invoice for the first installment payment on January 24, 2024.

26.    Having fulfilled its obligations under the MSA and SOWA, Wiser Partners sent Volato an invoice for the second installment payment on March 7, 2024.

27.    Wiser Partners followed up with Volato multiple times in March and in April 2024, to request payment on the outstanding invoices.

28.    On April 4, 2024, Volato indicated to Wiser Partners that it would receive the payments it was owed, but the payments were never made.

### *Volato Fails to Advance Search*

29.    Volato refused to respond to Wiser Partners' requests for payment and generally has refused to respond to communications from Wiser Partners regarding the search since May 17, 2024.

30.    By ignoring Wiser Partners' numerous communications, Volato has failed to advance the search to fill the Chief Marketing Officer position for more than fourteen (14) days.

31.    To date, Volato has not paid Wiser Partners for the executive recruiting services rendered.

32.    On June 20, 2024, Wiser Partners sent Matthew Liotta, CEO of Volato, a demand letter notifying Volato that it was terminating the engagement pursuant to the terms outlined in MSA, and demanding payment of $168,000.00, the agreed-upon fee for Wiser Partners' services as outlined in the SOWA.

33.    In that demand letter, Wiser Partners informed Volato that if it did not receive the payment it was owed, it would file a complaint for breach of contract.

34.     To date, Volato has refused and continues to refuse to pay Wiser Partners the amount it is owed.

## COUNT I: BREACH OF CONTRACT

35.     Wiser Partners incorporates the allegations of paragraphs 1 through 34 as if fully stated herein.

36.     A valid contract existed between Wiser Partners and Defendant, as evidenced by the MSA and SOWA executed on January 19, 2024.

37.     Wiser Partners has fulfilled its obligations under the MSA and SOWA.

38.     Defendant has breached the MSA and SOWA by failing to pay one-third of Wiser Partners' fee upon execution of the SOWA.

39.     Defendant has breached the MSA and SOWA by failing to pay one-third of Wiser Partners' fee upon Wiser Partners' submission of candidates for the Chief Marketing Officer position.

40.     Defendant has breached the MSA and SOWA by suspending and/or failing to advance the search to fill the Chief Marketing Officer position for more than 14 calendar days.

41.     As a direct result of Defendant's breach of contract, Wiser Partners has experienced damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Wiser Partners, LLC prays that this Honorable Court award judgment in its favor and against Defendant Volato, Inc., and award damages consistent with the allegations herein, as well as such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ *Victor A. Walton, Jr.*

Victor A. Walton, Jr., Esq.

-6-

Alex X. Shadley, Esq.
Vorys, Sater, Seymour and Pease LLP
301 East Fourth Street
Great American Tower, Suite 3500
Cincinnati, OH 45202
Telephone: 513-723-4078
Facsimile: 513-852-7833
vawalton@vorys.com
axshadley@vorys.com
*Attorneys for Plaintiff Wiser Partners, LLC*

-7-

## **JURY DEMAND**

Plaintiff Wiser Partners demands a trial by jury on all claims and defenses so triable in this action.

/s/ *Victor A. Walton, Jr.*
Victor A. Walton, Jr.

## **PRAECIPE TO THE CLERK**

Please serve a copy of the Summons and Complaint by certified mail, return receipt requested, upon the following:

VOLATO, INC.
1954 Airport Road, Suite 124
Atlanta, GA 30341

/s/ *Victor A. Walton, Jr.*
Victor A. Walton, Jr.



January 19, 2024

Trudie Diaz-Farmer
VP, Administration
Volato, Inc.
1954 Airport Rd, Suite 124
Atlanta, GA. 30341

Re: **Master Services Agreement (MSA) with Wiser Partners, LLC**

Dear Trudie:

This letter establishes a Master Services Agreement (MSA) between Wiser Partners, LLC ("WP") and Volato, Inc. (the "**Company**"), effective as of this date, for future retained executive recruiting services. Specific engagements, for each Executive Position recruited, will be detailed in subsequent Scope of Work Agreements (SOWA). The Company agrees to engage WP as its exclusive agent, when Company executes a SOWA for specific searches, per the terms and conditions of this MSA. This MSA (considered drafted mutually, and agreed to, by the parties) supersedes any and all prior written or verbal conditions addressed with respect to this agreement. This MSA (considered drafted mutually, and agreed to, by the parties) supersedes all prior written or verbal conditions addressed with respect to this agreement.

## Search Fee

Unless otherwise stipulated in the SOWA (which is the controlling document for title, hiring manager, compensation, location and fees), WP's search fee ("Fee") is 30% of the total Target Compensation (which includes base salary, incentive bonus, sign-on bonus) payable during the first full calendar year of the new hire's employment. Each SOWA will establish Target Compensation for each search. If the candidate is hired at a total, projected cash compensation level higher or lower than the Target Compensation, then the Fee will be adjusted accordingly. In addition, and not part of the Fee, the Company agrees to provide the new hire with a reasonable relocation package, or reimbursement for commuting expenses.

## Payment of the Fee

The Fee will be payable in three installments. 1/3 of the Fee is due when the SOWA is executed. WP will then submit its second invoice (for the second 1/3 of the Fee) at the time WP presents candidates (which, for purposes of this agreement, means the presentation and discussion of final candidates, who have been screened and assessed by WP). The third and final invoice for the remaining balance will be sent to the Company when the candidate accepts employment. If any invoice is not paid by the 30th day following issuance of the invoice, WP may elect to assess compounded monthly interest on amounts due, at the rate of 1.5%/month.

## Out-of-Pocket Expenses

During the course of each engagement, WP will bill the Company bi-monthly for out-of-pocket (OOP) expenses. If travel is needed, all expenses incurred by WP and/or candidates will be itemized and added to the project expense invoice. It is understood that WP consultants fly at refundable coach class rates, domestically, and refundable business class rates, internationally, and WP will directly manage any candidate travel. All travel related to this engagement will be at the expense of the Company, and is billed at-cost (no mark-up). Note, non-refundable fares may be ticketed for candidate/WP and/or candidate/Company face-to-face interviews; if Company modifies candidate selection or candidate withdraws, the Company is still responsible for the non-refundable fare expense. Non-travel-related OOP expenses are minor (generally limited to document preparation, and possibly background checks).

EXHIBIT A

### Candidate's Qualifications

WP will conduct a general assessment of each candidate and, when possible, will attempt to validate each assessment through references. However, it is understood that unless Company prefers WP to handle this, WP will not (directly or indirectly) administer drug screening or conduct background investigations of a candidate's educational or employment record, criminal record, motor vehicle record or other similar information, which could be discovered in the course of a full, private investigation.

### Guarantee

As a demonstration of WP's commitment to the success of each search, WP provides a one-time performance guarantee for each new hire in an Executive Position. Accordingly, if the employment of the new hire is terminated by the Company for poor performance during the first 180 calendar days of employment, WP will activate a replacement search as soon as capacity is available to recruit an equivalent (title/level, compensation) replacement, at no charge to the Company, other than any reasonable OOP expenses related to the assignment (the "Guarantee"). There is no guarantee extended to the replacement. This Guarantee will not become effective unless the Company sends WP written notice detailing the facts and circumstances related to the termination within ten business days after the date the employment is terminated. This Guarantee will not apply if the employment is terminated – by the Company, or the new hire - due to any of the following circumstances: (1) the "Title," "Scope of Responsibilities" or "Candidate Experience" requirements are materially changed after the candidate has accepted employment; (2) the compensation package for the Executive Position is materially reduced after the candidate has accepted employment; (3) the geographic location of the position is changed after the candidate has accepted employment; (4) the Position is eliminated, whether due to a RIF, insufficient work, lack of operating cash, or for any other reason; (5) there is a change in the ownership and/or control of the Company; (6) the individual managing the new hire leaves or changes in the first 90 days of employment; (7) the new hire is terminated – at any point - for any reason that could have been identified at the time of hire, in a standard background check; (8) the Company changes its vaccination or medical requirements, after employment has started, causing the candidate to resign; and/or (9) the candidate dies or becomes disabled. WP may terminate this Guarantee if it does not receive timely payment for all outstanding invoices, or if the replacement search is not activated by Company within ten business days following the termination of the candidate's employment, or if a replacement search is activated and then either paused, or terminated.

### Extended Fee

It is possible that the Company will determine that a candidate WP has presented, or assessed, is more suitable for a position other than the Executive Position. The Company agrees that, if any candidate WP presents, assesses, or is otherwise asked by the Company to contact during the search process is employed in any of the situations described below (the "Other Engagements") within 12 months after the date that candidate is presented to the Company, then the Company and the entity hiring or engaging the candidate will be responsible for paying WP an Extended Fee. The Extended Fee is a separate charge, in addition to the Fee, regardless of whether the original engagement is completed successfully or not. The Other Engagements include any situation in which a candidate is: (1) employed by the Company, or any department, division, subsidiary or similar entity affiliated with the Company (collectively, an "Affiliate") for any position other than the Executive Position; (2) retained by the Company or an Affiliate as an outside consultant instead of as an employee; or (3) referred to and hired or retained as an outside consultant by anyone with the Company's involvement. The Extended Fee will be equal to 25% of the annualized cash compensation payable to the candidate in connection with the Other Engagement except that, if the consulting arrangement is based upon a month-to-month or other temporary arrangement, WP will apply a "pro-rata factor," and resolve such a situation on an equivalent basis. The Extended Fee will be payable to WP upon the date of the employment or retention, on the same conditions as the Fee. No Guarantee obligation will exist for any arrangement involving any Extended Fee or Other Engagement.

### Confidentiality

It is understood that the information presented by WP in connection with each engagement, including but not limited to the names of the candidates, is highly confidential and unauthorized disclosure is likely to result in immediate and significant damages to the candidates, WP and/or others involved. Accordingly, the Company agrees: (1) to use every effort to respect and preserve the confidential nature of such information; (2) not to disclose such information to any third party; and (3) not to contact any references submitted for any candidate without the prior written consent of WP, which WP may withhold in its sole discretion (e.g., unless it receives the candidate's consent). Separately, the Company understands that the database, call sheets, and contact information held by WP and its affiliates is highly confidential and cannot be disclosed to the Company or anyone else unless WP agrees to do so.

## Termination of this Engagement

If the Company is dissatisfied for any reason before the Company commits to hire a candidate for the Executive Position, the Company may cancel an engagement, within the first forty-five (45) days following the signing of the SOWA, by sending written notice to WP accompanied by a termination payment of one-half (50%) of the projected Fee and payment in full of all OOP Expenses (collectively, the "**Termination Fee**"). However, if the Company hires a candidate WP has presented for an Executive Position within 12 months after the termination of an SOWA, then the Company will owe the full balance of the Fee. If a candidate WP has presented accepts any of the Other Engagements within 12 months after the termination of this engagement, then the Company and the Affiliate or other entity hiring the candidate will jointly and severally owe the Fee, the Extended Fee, and unpaid OOP expenses. Any cancellation or termination after the first forty-five (45) days of any engagement, will result in payment of 80% of the entire Fee and any outstanding OOP Expenses.

WP may terminate any engagement if the Company: 1) suspends, or fails to otherwise advance the search, for any reason, for more than 14 calendar days; 2) uses another search firm or recruiter, for the same Executive Position, at any time during the course of an engagement; 3) fills an Executive Position with an internal candidate or one sourced through another channel; 4) changes the "Title," "Scope of Responsibilities," or "Candidate Experience" requirements for the Executive Position; 5) changes the Target Compensation after the search begins; 6) changes the location where the new-hire would be based, after the search has been initiated; 7) announces any legal or financial change in control of the Company; 8) does not behave consistent with the "confidentiality" section herein, or the "equal opportunity" provisions below, or 9) changes the hiring manager for the Executive Position at any point after signing of the SOWA, but before the new hire has started. If WP terminates an engagement for any of these reasons, the Company must pay WP the entire Fee, unpaid OOP expenses, and all other amounts which subsequently become payable under the terms of the preceding paragraph.

## Miscellaneous

In the event of a dispute hereunder, the parties consent to jurisdiction and venue in the State of Ohio, Hamilton County, and to Ohio law governing all issues addressed herein. **Each party is an equal opportunity employer and will not discriminate in the acceptance or employment of candidates on the basis of race, color, appearance, religion, gender, age, national origin, marital status, sexual orientation, disability or other protected characteristic.**

## Next Steps

Trudie - We look forward to working with you and the Company. Please sign this letter agreement, and email a scanned copy to david@wiserpartners.com.

Sincerely,

David G. Wiser, Managing Principal
**WISER PARTNERS, LLC, an Ohio limited liability company**

### ACKNOWLEDGMENT

The Company agrees to be bound by all of the terms and conditions of the preceding engagement agreement and confirms that the person signing below is duly authorized and vested with full power and authority to document, execute and deliver this agreement on behalf of the Company.

Volato, Inc. _____ a (n)

By: *Trudie Farmer* _____

Printed Name:  Trudie Diaz-Farmer

Title:  VP, Administration

Date:  Jan 19, 2024



### Scope of Work Agreement (SOWA)

This outlines and confirms the SOWA between Volato, Inc. and Wiser Partners, LLC to engage, scope and deploy retained executive search services, per the details outlined below. All terms for this engagement have been outlined and agreed-to in an original Master Services Agreement (MSA), executed between the two parties in January, 2024. Those terms will remain unchanged.

- **Title** – Chief Marketing Officer

- **Hiring Manager** – Matthew Liotta, CEO

- **Location** – Remote (any U.S. city)

- **Compensation:**

    o   Base Salary (range) – $250,000 to $310,000 (target $280,000)

    o   Bonus – 100% target ($280,000)

    o   LTIP – Yes, likely RSU's (#/value to be determined at offer stage)

    o   Sign-On Bonus – $TBD

    o   Other – Healthcare; 401(k)

- **Search Activation Date** – Week of January 22, 2024

- **Search Fee** – $168,000 (30% of total year-one cash comp ($560,000)

### Execution

**VOLATO, INC.**

- Signed: _Trudie Farmer_____

- Printed Name: Trudie Diaz-Farmer

- Title: VP, Administration

- Date: Jan 19, 2024_____

**WISER PARTNERS, LLC**

- Signed: _____

- Printed Name: David Wiser

- Title: Managing Principal

- Date: __January 19, 2024___

EXHIBIT B

# Volato Inc. WP-MSA & SOWA (01 19 24)

Final Audit Report                                                         2024-01-19

| | |
|---|---|
| Created: | 2024-01-19 |
| By: | Jamie Bigner (jamie@wiserpartners.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAwITw6cIWbYk7Ja8HPxQYFBqteywiI794 |

## "Volato Inc. WP-MSA & SOWA (01 19 24)" History

📄 Document created by Jamie Bigner (jamie@wiserpartners.com)
   2024-01-19 - 7:00:42 PM GMT- IP address: 184.54.56.211

📧 Document emailed to Trudie Farmer (trudie.farmer@flyvolato.com) for signature
   2024-01-19 - 7:01:34 PM GMT

📄 Email viewed by Trudie Farmer (trudie.farmer@flyvolato.com)
   2024-01-19 - 7:03:36 PM GMT- IP address: 104.47.58.126

✍️ Document e-signed by Trudie Farmer (trudie.farmer@flyvolato.com)
   Signature Date: 2024-01-19 - 7:05:11 PM GMT - Time Source: server- IP address: 50.229.202.242

✅ Agreement completed.
   2024-01-19 - 7:05:11 PM GMT


Adobe Acrobat Sign